SEXTON, Judge.
The defendant, James 0. Pearson, was convicted by a jury of the crime of vehicular homicide. He was sentenced to thirty (30) months at hard labor and now appeals his conviction and sentence asserting three specifications of error which he contends warrant the reversal of the conviction and sentence. Finding no merit to any of defendant’s contentions, we affirm the conviction.
FACTS
James Pearson and Fred Farrar, the decedent, engaged in a series of bar hopping in the Monroe area on the evening of September 20,1983. The parties traveled back and forth between the American Legion Hall and a bar known as Betty Lou’s. During this time, both parties engaged in heavy drinking. As they left the American Legion Hall for the last time, Mr. Farrar began driving the Pearson pickup, apparently because one of their eventual, destinations was the home of Farrar’s girlfriend and Farrar did not wish to be seen visiting her in his own vehicle.
Proceeding from the American Legion Hall, the two ended up at Betty Lou’s. During their stay at this bar, Mr. Farrar was seen holding a set of keys which were not identified. Ricky DeBlieux, a former girlfriend of Mr. Pearson, witnessed the two parties leave the bar and enter Mr. Pearson’s pickup truck. She observed Far-rar get into the driver’s side. She did not, however, see the parties drive off as she had reentered the bar by that time. Farrar and Pearson then headed south on Highway 165 toward the parking lot of the Stockade Lounge with the intention of obtaining gasoline for the truck and then heading toward Rayville to see Farrar’s girlfriend. As the parties made a left turn across the opposite lane to enter the Stockade Lounge’s parking lot, they collided with a northbound tractor trailer unit towing a pickup truck. The tractor unit came to rest on its side pointed southward, while the pickup truck came to rest upside down between the tractor cab and the towed pickup truck which had broken loose. The *461 defendant suffered major injuries including a broken collar bone. Mr. Farrar suffered massive injuries that resulted in his death. Blood tests taken of the two men demonstrated that defendant had a blood alcohol content of .14 percent and the deceased .19 percent. Defendant was charged by bill of information with vehicular homicide and was found guilty by a jury and sentenced to thirty months at hard labor.
ASSIGNMENT OF ERROR NO. 1
Defendant claims by this assignment of error that the evidence adduced at his trial was legally insufficient to sustain his conviction for vehicular homicide. Specifically, he argues that the state’s evidence did not exclude the reasonable possibility that Mr. Farrar was the driver of the truck.
Under the standard of review enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983).
The defendant argues that a reasonable hypothesis has not been excluded by the evidence presented. Specifically, he argues that the hypothesis that someone other than he was driving the truck is reasonable. He testified at trial that Mr. Farrar was in fact driving the truck at the time of the incident. He additionally asserts that his theory is supported by the stipulated testimony of Ricky DeBlieux that she observed Mr. Farrar entering the truck after the two had exited Betty Lou’s Lounge. Additionally, defendant points to testimony that Mr. Farrar had been seen with keys in his hand while sitting at the bar in the lounge. Moreover, defendant asserts that the testimony of his expert witness as to motion dynamics and the movement of objects resolves the issue of the location of the parties in the truck.
Although Mr. Pearson was found pinned under the steering wheel, he argues that the accident consisted of two separate impacts such that the person in the driving position would have been knocked past the person in the passenger’s position during the course of the collision. Lastly, defendant seeks to discredit the testimony of the state’s experts by pointing out that their calculations and conclusions were not based upon a secondary impact or rollover.
The jury obviously rejected these contentions. We find the jury’s rejection of the defendant’s arguments reasonable in light of the record evidence.
The only eye witnesses to the accident were the defendant, the deceased, and the two occupants of the tractor-trailer unit. Neither of the latter pair, however, saw the position of the occupants of the pickup.
The defendant was found pinned under the steering wheel of the vehicle with the deceased to his right lodged between the seat and the back windshield.
Additionally, three separate people heard the defendant admit to being the driver. DeWanna Little, the niece of Mr. Farrar, testified she specifically asked Mr. Pearson who was driving and that he admitted to the fact. While ambulance driver Ben Watson and Trooper McGrew disagreed as to the exact words used by the defendant, both agreed that the defendant was unequivocal in his admission that he was the driver even though they acknowledged that the defendant was obviously in pain at the time.
*462 Finally, although defendant attempted by way of expert testimony to demonstrate that Mr. Farrar was the driver, the greater and more convincing evidence reveals otherwise. The testimony of Ray Herd, an expert in accident reconstruction, demonstrates that the left front of the tractor collided with the right front fender of the pickup. Dr. P.G. Grodman, the forensic pathologist who performed the autopsy on Mr. Farrar, testified that the type of injuries sustained by the victim, as well as the defendant, were consistent with the type of accident that occurred. On cross-examination he did agree that the injuries were not inconsistent with Mr. Farrar being the driver; however, he noted that this theory would be difficult to relate to his appreciation of how the accident occurred.
Although Dr. Arthur Bruce, the defendant’s expert in mechanical engineering, testified that in his opinion there was a secondary major impact on the vehicle (a conclusion which may support a theory that Farrar was the driver of the vehicle), he was not qualified as an expert in accident reconstruction. Notably, he corroborated the testimony of Ray Herd in his conclusions that the initial impact was to the right fender of the pickup. He was, however, unable to shed any light on the position of the parties in the vehicle at the time of the accident.
When the evidence is viewed as mandated by Jackson v. Virginia, supra, the defendant’s hyphothesis that Mr. Farrar was driving the vehicle is remote and unreasonable, especially in light of the defendant’s statements to the contrary. Therefore, we conclude that the evidence, when viewed in the light most favorable to the state, is legally sufficient to sustain the defendant’s conviction of vehicular homicide.
ASSIGNMENT OF ERROR NO. 2
Defendant, in his second assignment of error, argues that in the event that this court finds that defendant was the driver of the vehicle, the vehicular homicide statute, as applied to the defendant, is unconstitutional as the zone of protection afforded by the statute was extended to cover a class of victims not intended nor envisioned by the legislature. He argues that the defendant was denied both due process and equal protection of the law because the criminal defendant in the context of a vehicular homicide prosecution is afforded a lesser degree of constitutional and procedural protection than a defendant in ordinary civil litigation. Specifically, he asserts that the statute in question does not allow for consideration of other pertinent factors such as the conduct of the victim. The fact that the victim voluntarily entered the car with a drunk driver and was also found to be intoxicated is a fact which he claims should be taken into account before criminality should attach.
Appellant cites State v. Taylor, 463 So.2d 1274 (La.1985), in support of this argument. We find Taylor to be inappo-site to ⅛⅛ situation. Taylor specifically dealt with the question of whether or not LSA-R.S. 14:32.1A(2) * created an unconstitutional presumption of guilt.
Defendant, however, correctly quotes Taylor for the proposition that “the evident purpose of the vehicular homicide statute is to curb traffic fatalities caused by the consumption of alcohol.” State v. Taylor, supra, at page 1275. The statute itself provides that vehicular homicide is the killing of a human being caused approximately or caused directly by an offender engaged in the operation of a vehicle when his blood alcohol concentration is .10 percent or more.
A strict reading of the article leads us to conclude that the facts of the present case fall squarely within its provisions, even though the victim was intoxicated. The legislature has chosen to include within the statute the language suggesting that the killing of any human being under certain circumstances constitutes vehicular homicide. While we have found no jurisprudence addressing the specific issue, we *463 note that no exceptions or provisions to the contrary have been included in the article.
Also, the Louisiana Criminal Code provides that criminal provisions do not affect civil remedies. LSA-R.S. 14:6. It follows, therefore, that criminal proceedings and civil proceedings and the theories underlying both areas of the law are separate and distinct. Assuming arguendo that the duty/risk analysis employed in Louisiana civil liability would prevent recovery by this decedent, the defendant is still not protected from criminal culpability.
Accordingly, we find that the vehicular homicide statute includes the actions of defendant in the instant case. Furthermore, we reject defendant’s assertions that there has been an unconstitutional extension of the statute to a class of victims not intended to be included by the legislature. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 3
Defendant’s final assignment of error alleges an unconstitutionally excessive and disproportionate sentence in light of the particular circumstances of the instant case.
The test imposed by the reviewing court in determining the excessiveness of the sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Nelson, 449 So.2d 161 (La.App. 4th Cir.1984); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983), writ denied 439 So.2d 1074 (La.1983). The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with Louisiana Code of Criminal Procedure Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which must be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. McGhee, 469 So.2d 1051 (La.App. 2d Cir.1985).
Secondly, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly dis-portionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir. 1983), writ denied 435 So.2d 433 (La.1983). The trial judge has wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Nelson, supra; State v. Hammonds, supra.
In selecting a proper sentence, a trial judge is not limited to considering only a defendant’s prior convictions and may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ denied 452 So.2d 695 (La.1984).
Appellant does not contend that the trial court failed to articulate LSA-C.Cr.P. Art. 894.1 guidelines. Appellant, however, excepts to the weight that the trial judge afforded to certain factors. He first of all asserts that the trial judge failed to consider certain mitigating factors, namely, the conduct of Mr. Farrar which contributed to the resulting injury. He argues that the trial judge was in error in determining that defendant resisted compensation as he denies liability in a parallel civil suit. He next asserts that the trial court failed to give sufficient weight to the fact that defendant has changed his lifestyle and has obviously reformed, and failed to suffi *464 ciently consider the fact that the imprisonment of the defendant would entail excessive hardship on himself and his depen-dants. Lastly, he notes that all of these factors taken into consideration lead to the conclusion that the trial court was in error in failing to consider an alternate sentence without hard labor in view of the circumstances.
We agree, as the trial judge noted, that if the victim had not been out drinking with the defendant, his death would not have resulted. However, we are unconvinced by defendant’s argument that the conduct of the victim should serve to excuse the actions of defendant and therefore preclude his exposure to a jail term. He has been found guilty of vehicular homicide, a serious offense, and his actions are not mitigated by the condition of the victim at the time of the accident. It seems to us that the conduct which resulted in the accident — two dangerously intoxicated friends taking to the state highways in fun and frolic — is just the sort of conduct the statute seeks to deter.
Relevant to defendant’s arguments relating to compensation of the victim, we agree with defendant’s argument that he has a right to defend himself in a civil lawsuit and that compensation encompassed by LSA-C.Cr.P. Art. 894.1 is defined more in the nature of reparation. We nevertheless do not find that defendant has been prejudiced by this consideration. Clearly, reparation would be difficult in this case as the life of a human being has been taken. Therefore, the trial judge’s conclusion is a valid one. Moreover, we do not view this factor as being a major determinative factor in defendant’s sentence. Therefore, in light of the other considerations taken into account by the trial judge, as well as the facts of the case, we find no merit to this contention.
Finally, we consider counsel’s assertions that the trial court failed to consider certain mitigating factors — specifically, whether the defendant would commit another crime, as well as the hardship incurred by defendant’s family. The record leads us to conclude otherwise. The trial judge specifically addressed the issue of recurrence of the event and noted that in his opinion the incident may in fact happen again should the defendant return to his old ways. He noted the reformation that had taken place in defendant’s life , and extensively reviewed the defendant’s financial conditions and familial obligations. The trial court clearly balanced these factors against the aggravating nature of the offense and sentenced the defendant accordingly, a sentence we might add that is only six months greater than the minimum term mandated under LSA-R.S. 14:32.1.
Finally, although a suspended sentence is not prohibited under LSA-R.S. 14:32.1, based upon the extensive record of defendant which includes previous DWI offenses and traffic violations, we find that the trial court’s assessment is supported by the record. We therefore conclude that the sentence imposed is not grossly out of proportion to the severity of the offense and the sentence is not excessive. The defendant’s conviction and sentence are affirmed.
AFFIRMED.

 LSA-R.S. 14:32.1A(2) reads as follows:
(2) The offender’s blood alcohol concentration is 0.10 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.